

ENTERED
08/16/2010

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REICHMANN PETROLEUM CORP., | § | CASE NO.  06-20804 |
| | § | Chapter 11 |
| Debtor. | § | |

_____

| | | |
|---|---|---|
| | § | |
| JOHN W. DAHLBERG, MARILYN D. | § | |
| DAHLBERG,  THE JOHN AND | § | |
| MARILYN DAHLBERG COMMUNITY | § | |
| PROPERTY TRUST, AND DONALD R. | § | |
| MCCLURE, | § | |
| | § | |
| Plaintiffs, | § | ADV. NO. 09-02012 |
| | § | |
| v. | § | |
| | § | |
| CONOCOPHILLIPS  COMPANY, | § | |
| | § | |
| Defendant. | § | |
| | § | |

AMENDED

## MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CONOCOPHILLIPS COMPANY RELATING TO DOCUMENT #57 AND DENYING CONOCO PHILLIPS COMPANY'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT RELATING TO DOCUMENT #59

On this day came for consideration John and Marilyn Dahlberg, the John and Marilyn Dahlberg Community Property Trust and Donald R. McClure's ("Plaintiffs") Motion for Partial Summary Judgment (Doc. #57) and Conoco Phillips Company's Cross-Motion for Partial Summary Judgment (Doc. #59).  The Court, having heard the arguments of counsel and having reviewed the summary judgment evidence, finds that

there are no issues of material fact and that partial summary judgment should be entered in favor of the Plaintiffs on the Plaintiffs' claims against ConocoPhillips Company ("Conoco") for money had and received, conversion and their requests for declaratory relief because the July 29, 2008 Order Approving Joint Motion for Approval of Settlement and Compromise Between Reichmann, Conoco, Burlington and the Bamco Entities Pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Bamco Settlement") could not, as a matter of law, release the Plaintiffs' right to their revenues from their working interests in certain oil and gas leases and wells sold to them by Reichmann that have oil and gas wells operated by Conoco.  Plaintiffs are entitled to these revenues before and after the July 29, 2008 Bamco Settlement.  The Plaintiffs' Motion for Partial Summary Judgment on Conoco's liability for the revenues attributable to the Plaintiffs' working interests is granted in its entirety and the Court will deny in its entirety the relief sought by Conoco in its Cross-Motion for Partial Summary Judgment.  (Doc. #59).

## JURISDICTION AND VENUE

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and  1334, and venue  is proper pursuant to 28 U.S.C. §1409 because this proceeding is related to a case under Title 11 of the United States Code (the "Bankruptcy Code").

## PROCEDURAL BACKGROUND AND UNCONTROVERTED FACTS

Pursuant to various agreements, Plaintiffs purchased from Reichmann undivided working interests in the Villarreal, Las Palomas, Laurel and Laurel Mineral Estate oil and gas leases and wells prior to Reichmann filing its Petition under Title 11 of the Bankruptcy Code.  Reichmann has judicially admitted that it sold Plaintiffs these working interests pre-petition as set forth in Reichmann's August 27, 2007 Answer to Plaintiffs' Original

Adversary Complaint in Adversary No. 07-02045 ("Reichmann Adversary"). In the Reichmann Adversary, Plaintiffs litigated the Plaintiffs' right to written partial oil and gas lease assignments of these working interests. On March 3, 2009 this Court approved a Mutual Release and Settlement Agreement between Plaintiffs and Reichmann ("Reichmann Settlement") in which Reichmann agreed to execute written partial oil and gas lease assignments for ninety percent (90%) of the undivided working interests previously sold to the Plaintiffs, which included the working interests in the Villarreal, Las Palomas, Laurel and Laurel Mineral Estate oil and gas leases and wells. (Document #3694). In the Reichmann Settlement, Reichmann stipulated that it sold the working interests in the oil and gas leases and wells to the Plaintiffs pre-petition.

Conoco has presented no evidence that the Plaintiffs do not own their working interests in the Villarreal, Las Palomas, Laurel and Laurel Mineral Estate oil and gas leases and wells and all the summary judgment evidence is to the contrary. Although Conoco previously asserted that the Dahlbergs' working interest in the Villarreal oil and gas lease, prospect and wells had to be transferred to Conoco pursuant to Conoco's Motion for Allowance of Payment of Administrative Claim and to Determine Defect on Executory Contract filed in the underlying bankruptcy, this Court entered a Memorandum Opinion and Order Granting the Dahlbergs Summary Judgment on Conoco's claim on December 1, 2009.

This adversary proceeding was filed by the Plaintiffs after Conoco objected to the Reichmann Settlement on the grounds that the Bamco Settlement, approved over a year after the Reichmann Adversary was filed, released the Plaintiffs' right to revenues attributable to their undivided working interests in the Villarreal, Las Palomas, Laurel and

Laurel Mineral Estate oil and gas leases and wells up to the date of the Order approving the Bamco Settlement. (Document No. 5646).

Under the terms of the Bamco Settlement, the Bamco entities transferred their working interests in certain Reichmann-operated wells and also made a cash payment to Conoco. Although Reichmann released Reichmann's claims against Conoco for certain revenues, it is clear from the terms of the Bamco Settlement that those revenues only relate to Reichmann's working interests in oil and gas leases and the wells operated by Conoco, not those of unassigned working interest owners like the Plaintiffs. Reichmann released "amounts due and owing to Reichmann by the Conoco Parties or the Bamco Entities by virtue of Reichmann's or the Bamco Entities' interests in and ownership of interests in any Conoco or Burlington operated well or lease." These are the same Reichmann working interests that Reichmann would later sell under the Confirmed Plan with Court approval under the Court's May 1, 2008 Order Authorizing and Approving Sale. (Document No. 2238).

It is undisputed that Plaintiffs were not parties to the Bamco Settlement. Plaintiffs were not identified as parties in the Bamco Settlement, they were never identified by name in the Bamco Settlement, and they did not execute the Bamco Settlement. Conoco asserts that the Plaintiffs cannot recover the revenue attributable to their working interests in the Villarreal, Las Palomas, Laurel and Laurel Mineral Estate oil and gas leases and wells because the Bamco Settlement included a release of Conoco by the "Reichmann Party" which included "Reichmann, on behalf of themselves and their respective past, present and future successors, predecessors, assignees, transferees …" and because Reichmann was acting as the Plaintiffs' "trustee."

But before the Bamco Settlement and the Reichmann Settlement, on June 27, 2007, Reichmann filed its Chapter 11 Plan of Reorganization.  The Plan and its attachments identified the Plaintiffs as owners of unassigned working interests in the Villarreal, Las Palomas, Laurel and Laurel Mineral Estates oil and gas leases and wells.  Plaintiffs filed the Reichmann Adversary on July 16, 2007.  In paragraph 15 of their Complaint, Plaintiffs alleged that they purchased from Reichmann working interests in the Villarreal, Las Palomas, Laurel and Laurel Mineral Estates leases and wells.   Reichmann admitted this allegation in paragraph 15 of its Answer.  In the Reichmann Adversary, Plaintiffs asserted claims against Reichmann for fraud, breach of fiduciary duty, unjust enrichment, negligent misrepresentation, violations of the Texas Deceptive Trade Practices Act, and negligent misrepresentation.  Additionally, Plaintiffs also alleged that as a result of Reichmann's fraudulent conduct, Plaintiffs' working interest were held by Reichmann in a constructive trust or resulting trust for the Plaintiffs' benefit.  Plaintiffs did not allege Reichmann was their "trustee."

On November 26, 2007, the Plaintiffs elected the litigation option under Section 9.04 of the Amended Joint Plan of Reorganization.  On May 2, 2008, this Court confirmed Reichmann's Second Amended Plan of Reorganization (the "Confirmed Plan").  The Confirmed Plan specifically addressed the claims of undivided working interest owners without written assignments of their interests in oil and gas leases like the Plaintiffs, who were defined under the Confirmed Plan as "Unassigned Working Interests Owners."

Section 9.04 of the Confirmed Plan set forth the litigation option.  Section 9.04(a)(3) stated that "a Non-Settling Unassigned WIO's Unassigned Working Interests shall be held in suspense by the Debtor pending the entry of a Final Order determining the

rightful ownership of any such Unassigned Working Interest." An "Unassigned Working Interest" is defined as an unassigned working interest in a Reichmann Well or Non-Reichmann Well under Section 1.116 of the Confirmed Plan. A Non-Reichmann well is defined under Section 1.69 as a "an oil and gas well operated, as of the Petition Date, by a party other than Reichmann and/or a lease on which any such well is situated, as applicable to a particular Unassigned Working Interest." It is undisputed that Conoco was the operator of the Villarreal, Las Palomas, Laurel and Laurel Mineral Estates wells as of the Petition Date.

Section 9.04.(b) of the Confirmed Plan provided that Non-Settling Unassigned Working Interest Owners that were successful in litigation should be entitled to receive an assignment from the Creditor Trustee of the Unassigned Working Interest plus all "Net Production Proceeds." The Confirmed Plan defined "Net Production Proceeds" as "the oil and gas revenues from a well received after December 8, 2006."

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("[T]he substantive law will identify which facts are material."). Only disputes about material facts will preclude granting of summary judgment. *Id.* In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *See Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990).

Once the movant makes this showing, the burden shifts to the non-movant to show that summary judgment is not appropriate.  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  "[T]his burden is not satisfied with some 'metaphysical doubt as to the material'…by 'conclusory allegations,'…by 'unsubstantiated assertion,' or by only a 'scintilla of evidence.'"  *Id.* Rather, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'"  Fed.R.Civ.P. 56(e).  If the non-movant fails to meet this burden, then summary judgment is appropriate.  *See Tubacex, Inc. v. M/v Risan,* 45 F.3d 951, 954 (5th Cir. 1995).

## DISCUSSION

### A.    Reichmann could not release revenues it did not own.

The summary judgment evidence conclusively establishes that the Plaintiffs' working interests—and the attributable revenue—were owned by Plaintiffs, not Reichmann, at the time of the Bamco Settlement.  Thus, Reichmann could not release Plaintiffs' right to their revenue under Texas law.  *See Lindsey v. Prive Corp.*, 161 F.3d 886, 891 (5th Cir. 1998)*; Equitable Recovery, L.P. v. Health Ins. Brokers of Texas*, 235 S.W.3d 376 (Tex. App.—Dallas, 2007, no pet.).  And although a settlement agreement may bind parties who have notice, regardless of what a settlement agreement states, a party cannot release property, money or claims it does not own.  *See Equitable Recovery, L.P. v. Health Ins. Brokers of Texas,* 235 S.W.3d 376 (Tex.App.—Dallas, 2007, no pet.).

Reichmann judicially admitted in the Reichmann Adversary and stipulated in the Reichmann Settlement that it sold the Plaintiffs their working interests in the Villarreal, Las Palomas, Laurel and Laurel Mineral Estate leases and wells pre-petition.  Conoco has

presented no evidence to the contrary.  Moreover, under Texas law, once the Plaintiffs purchased working interests in the Villarreal, Las Palomas, Laurel and Laurel Mineral Estate leases and wells from Reichmann, revenue earned by those working interests became the property of Plaintiffs, regardless of whether those revenues were "held" by Conoco as operator.  *Wagner & Brown v. Shephard,* 282 S.W.3d 419, 426 (Tex. 2008). Indeed, under Texas law the Plaintiffs have a security interest in the revenue from their production.  Tex. Bus. & Com. Code §9.343 (West 2009).  Because Plaintiffs' working interests and production revenues did not belong to Reichmann, Reichmann could not release Plaintiffs' right to their revenue.  This is also clear from the language of the Bamco Settlement wherein Reichmann only released "amounts due and owing to Reichmann" by virtue of "Reichmann's interests."

Although Reichmann did not provide the Plaintiffs with written assignments of their working interests pre-petition, the absence of an assignment does not affect the validity of the sales between Reichmann and Plaintiffs.  *See In re Harwood*, 404 B.R. 366 (E.D.Tex. 2009).  Conoco's attempts to establish a sale did not occur fail.  It is undisputed that Conoco was not a party to any transactions between Reichmann and the Plaintiffs.  Under Texas law, non-parties to a contract do not have standing to assert the statute of frauds as a defense to that contract's enforcement, which Conoco attempts to do here.  *See Madera Prod. Co. v. Atlantic Richfield Co.*, 107 S.W.3d 652, 662-663 (Tex. App.—Texarkana 2003, pet denied) (stating that a stranger to a contract for sale of a mineral interest did not have standing to challenge that agreement on grounds that it did not comply with the statute of frauds); *Moore Burger, Inc. v. Phillips Petroleum Co.*, 492 S.W.2d 934, 940 (Tex. 1973).

Even if Conoco had such standing, Conoco has presented no evidence as to why the sales of the Las Palomas, Laurel and Laurel Mineral Estates working interests do not meet the statute of frauds; the only evidence Conoco cites is its own summary judgment argument regarding Reichmann's sale of the Villarreal working interest to the Dahlbergs. This Court previously ruled that the Dahlbergs purchased their working interest in the Villarreal Lease from Reichmann in July of 2005 and, in doing so, rejected Conoco's statute of fraud argument.

**B.     Even if Reichmann held legal title to the Plaintiffs' working interests, it could not release Plaintiffs' revenues that were not part of Reichmann's Estate.**

Even if Reichmann held legal title to the Plaintiffs' working interests, Reichmann held such title in a constructive or resulting trust for Plaintiffs' benefit. Reichmann stipulated in the Reichmann Settlement that it held any such title in a constructive or resulting trust. Under Texas law and controlling bankruptcy authority, property held in constructive trust by the debtor is not the property of the debtor's estate and may not be disposed of by the debtor. *In re Southermark* 49 F.3d 1111, 1117 (5th Cir. 1995)*; See In re Matter of Haber Oil, Inc.*, 12 F.3d 426, 435-36 (5th Cir. 1994) (holding that because Section 541(d) excludes property subject to a constructive trust from the bankruptcy estate, Section 541(d) prevails against the trustee's strong-arm powers). Thus, even if Reichmann had legal title to the Plaintiffs' working interests, it could not dispose of that interest as property of the estate. For the same reason Reichmann could not dispose of this interest, it could not dispose of its attributable revenue.

In addition, under the Confirmed Plan, Non-Settling Unassigned Working Interests, like those of Plaintiffs, "shall be held in suspense by the Debtor pending the entry of a Final Order." Just as the Confirmed Plan required the Debtor to hold the

Plaintiffs' working interests in suspense, it could not release the revenue attributable to that interest.  This is particularly true when, as here, the Plaintiffs elected to litigate and filed the Reichmann Adversary prior to the Bamco Settlement.

**C.      Plaintiffs were not in privity with Reichmann.**

A settlement agreement cannot, as a matter of law, release the claims of persons that are not a party or in privity with a party to that agreement at the time of the agreement.  *See Lindsey,* 161 F.3d at 891.  It is undisputed that Plaintiffs were not parties or signatories to the Bamco Settlement.

A trustee or debtor-in-possession is not in privity with a creditor when the trustee or debtor-in-possession does not have the right, or the exclusive right, to assert the claim on behalf of the creditor, or when the trustee's or debtor-in-possession's interests conflict with that of the individual creditor in an action.  *See, e.g., The Cadle Co. v. Reed,* 392 B.R. 675, 682-83 (N.D. Tex. 2008).

Here, at the most, Reichmann held only legal title to the Plaintiffs' working interests during the Reichmann Adversary and at the time of the Bamco Settlement.  *See, Monnig's Dept. Stores, Inc. v. Azas Oriental Rugs, Inc*., 929 F.2d 197, 201 (5th Cir. 1991).   Property in which a debtor only owns legal but not equitable title does not become property of the estate.  *See In re Matter of Haber Oil, Inc.*, 12 F.3d at 435-36. Thus, just as Reichmann could not assert a claim related to property that was not part of the estate, it could not release revenues from property that was not property of the estate. In addition, the interests of Reichmann and the Plaintiffs were in conflict at the time of the Bamco Settlement because the Reichmann Adversary was pending.

**D.    Plaintiffs are not "Assignees" of Reichmann as that term is used in the Bamco Settlement.**

Conoco contends that Reichmann's release of its claims against Conoco also released the Plaintiffs' claims against Conoco for revenue attributable to their separate working interests because Plaintiffs are "assignees" of Reichmann.  Plaintiffs are not "assignees" of Reichmann as that term is used in the Bamco Settlement.  At all times during Reichmann's bankruptcy, and at the time of the Bamco Settlement, Plaintiffs owned their working interests.  An "assign" takes the property or rights of the assignor.  Under the Reichmann Settlement, Plaintiffs did not take the property of Reichmann.  Rather, under the Reichmann Settlement, Plaintiffs received written partial oil and gas assignments of their previously owned working interests in oil and gas leases and wells.  The fact that Plaintiffs received oil and gas assignments does not make them an "assignee" of Reichmann.  The Plaintiffs' partial oil and gas assignments simply allowed the Plaintiffs to record a working interest they already owned.

**E.    Reichmann had no authority to release Plaintiffs' revenue or claims.**

In response to the Plaintiffs' Motion for Partial Summary Judgment, and in support of its Cross-Motion for Partial Summary Judgment, Conoco asserts numerous theories to support its contention that even if Reichmann did not own the Plaintiffs' working interests or their attributable revenues, it had the authority to release Plaintiffs' revenues at the time of the Bamco Settlement.

Conoco asserts that (1) Reichmann was the Plaintiffs' "trustee" and therefore could release their right to their revenues; (2) the Dahlbergs authorized Reichmann to represent their interests for all purposes; (3) the Joint Operating Agreements between Reichmann and Conoco gave Reichmann the right to release the Plaintiffs' revenues

post-petition; and (4) Reichmann, as a debtor-in-possession, had the absolute right to release Plaintiffs' revenues. For the following reasons, the Court rejects all of Conoco's arguments.

It is undisputed that an express trust did not exist with Reichmann as the trustee for Plaintiffs. Although Plaintiffs alleged that any legal title held by Reichmann to Plaintiffs' working interests was in a constructive trust, a constructive trust is legally distinct from an express trust intentionally established between a trustee and a beneficiary. *See, e.g.,* Texas Trust Code, T.V.C.A. Property Code § 111.003 (stating that a "trust" to which the Code applies is an express trust and does not include a constructive trust). A constructive trust, in contrast to an express trust, is an equitable remedy created by the courts to prevent unjust enrichment. *See Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401, 410 (1960); *Hudspeth v. Stoker,* 644 S.W.2d 92, 94 (Tex.App.—San Antonio 1982, writ ref'd). A constructive trust subjects the person holding legal title to property to an equitable duty to convey it to another, on the ground that his acquisition or retention of the property is wrongful. *See Talley v. Howsley,* 142 Tex. 81, 176 S.W.2d 158, 160 (1943). Consequently, rather than a constructive trust giving the "trustee" the right to dispose of the Plaintiffs' working interest and revenues and bind Plaintiffs as Conoco proposes, a constructive trust actually takes away Reichmann's ability to do so.

Conoco's assertion that Reichmann had the authority to bind the Plaintiffs post-petition also fails. Actual authority has also been defined as authority which "is created by written or spoken words or conduct by the principal to the agent." *McWhorter v. Sheller,* 993 S.W.2d 781, 786 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). In determining whether apparent authority exists, a court looks to the acts of the principal and ascertains

whether those acts would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority to act on behalf of the principal. *Suarez v. Jordan,* 35 S.W.3d 268, 272-73 (Tex.App.—Houston [14th Dist.] 2000, no pet.).

The only summary judgment evidence Conoco cites in support of its position is testimony from one Plaintiff, John Dahlberg, stating that the Dahlbergs dealt with Reichmann regarding the pre-petition operation of those wells.  Conoco presents no evidence that Reichmann had the authority to act on Dahlberg's behalf, much less the other Plaintiffs' behalf, *after* Reichmann filed for bankruptcy, particularly that Reichmann had such authority at the time of the Bamco Settlement.  In fact, the summary judgment evidence is to the contrary.  Plaintiffs filed Proofs of Claim against Reichmann, filed the Reichmann Adversary and defended their working interests.

Conoco also asserts that Reichmann was acting as Plaintiffs' "virtual representative" at the time it entered into the Bamco Settlement.  A bankruptcy trustee is only a creditor's "virtual representative" with regard to a claim where the trustee's and creditor's interests with regard to that claim are in privity with each other.  *In re Shuman,* 78 B.R. 254, 256 (9th Cir.  BAP 1987).  A trustee is not in privity with a creditor when the trustee does not have the right to assert the claim on behalf of the creditor or when the trustee's interests conflict with that of the creditor.  *Cadle Co.,* 392 B.R. at 682-83.  As set forth above, Reichmann did not have the right to assert the Plaintiffs' claims against Conoco at the time of the Bamco Settlement and Reichmann and the Plaintiffs' interests were in conflict at the time of the Bamco Settlement.

**F.     The Joint Operating Agreements between Reichmann and Conoco did not give Reichmann the authority to release Plaintiffs' revenues.**

Conoco also asserted in response to Plaintiffs' Motion for Partial Summary Judgment that Section VIII(D) of the various Joint Operating Agreements ("JOAs") gave Reichmann the ability to release Plaintiffs' claims related to their working interests and revenues.  The summary judgment evidence demonstrates that Plaintiffs did not sign the JOAs and were not parties to the JOAs.  The plain language of the section in the JOA cited to by Conoco also does not support Conoco's contention it allowed Reichmann to release Plaintiffs' revenue.  The language of Section VIII(D) states that co-owners have the individual right to enter into contracts and agreements regarding the oil and gas produced by their working interest, and also an individual, separate right to receive "payment of the sale of the proceeds thereof."

It is therefore ORDERED that the Plaintiffs' Motion for Partial Summary Judgment is GRANTED in its entirety; it is therefore ORDERED that Conoco Phillips' Cross-Motion for Summary Judgment is DENIED in its entirety; and the Court will determine, following the entry of this Order, the damages to be recovered ~~from~~ by Plaintiffs, including attorneys' fees and costs, and will issue its declaratory relief in its Final Order and Judgment.

Date:   August 16, 2010
_____

_____
RICHARD S. SCHMIDT,
UNITED STATES BANKRUPTCY JUDGE

14